**Case No. 24-2038**
[Consolidated with Case No. 24-2135 & 24-2144]

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

JOHNATHAN TALBOT,

_Plaintiff-Appellant,_

v.

MANOAH AINUU, and THE NORTH FACE APPAREL
CORP.,

_Defendant-Appellees._

On Appeal from a Final Judgment of
The United States District Court for the District of Montana
Case No. CV-00066-BMM
Hon. Brian M. Morris, Presiding

_____

**PLAINTIFF-APPELLANT'S OPENING BRIEF**

_____

Matthew Monforton
Monforton Law Offices
32 Kelly Ct.
Bozeman, MT  59718
(406) 570-2949
matthewmonforton@yahoo.com

Ian Prior*
Nicholas Barry*
America First Legal Foundation
611 Pennsylvania Ave., SE #231
Washington, D.C. 20003
(571) 639-6711
Ian.Prior@aflegal.org
_Pro hac vice_*

_Attorneys for Plaintiff-Appellant Johnathan Talbot_

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................... iii

INTRODUCTION ............................................................................... 2

JURISDICTIONAL STATEMENT ...................................................... 3

ISSUES PRESENTED ........................................................................ 4

STATEMENT OF THE CASE ............................................................. 5

SUMMARY OF THE ARGUMENT .................................................... 8

STANDARD OF REVIEW.................................................................. 10

ARGUMENT .................................................................................... 11

   I.   The District Court Erroneously Applied Washington Law Instead of Montana Law, Contrary to the Relevant Choice of Law Principles and the Facts of the  Case ............................................... 11

      A.  The Choice Of Law Determination Is A Question For The Jury 12

      B.  The District Court Erred in Its Application of the Restatement's Choice of Law Principles to the Case, Warranting Reversal Due to an Erroneous Application of Law to the Facts ................................ 14

   II.  The District Court Erred in Determining That the Statements Made by Ainuu Were Non-Actionable Opinions .................................. 18

      A.  Ainuu Implied False and Defamatory Allegations of Fact ......... 19

      B.  Ainuu's Statements Are Actionable Mixed Opinion ................... 21

   III. The District Court Erred in Dismissing the Tortious Interference Claim ...................................................................................... 26

   IV. The District Court Erred in Determining That TNF Is Not Vicariously Liable for Ainuu's Defamation and Tortious Interference 27

CONCLUSION ................................................................................. 31

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

64 P.3d 49 (Wash. Ct. App. 2003) ............................................................. 20

*Alpine Indus. Computers, Inc. v. Cowles Pub. Co.*,
    57 P.3d 1178 (Wash. Ct. App. 2002) ................................................. 20

*Am. Soc. of Mech. Engineers, Inc. v. Hydrolevel Corp.*,
    456 U.S. 556 (1982) .......................................................................... 28

*Aqua-Marine Constructors v. Banks*,
    110 F.3d 663 (9th Cir. 1997) ............................................................. 11

*Buckles v. BH Flowtest Inc.*,
    476 P.3d 422 (Mont. 2020) ................................................................ 11

*Davis v. Cornely*,
    2021 WL 4805119 (N.D. Ohio Oct. 14, 2021) ................................... 23

*Dunlap v. Wayne*,
    716 P.2d 842 (Wash. 1986) ................................................................ 23

*Eichenberger v. ESPN, Inc.*,
    876 F.3d 979 (9th Cir. 2017) ............................................................. 10

*Gardner v. Martino*,
    563 F.3d 981 (9th Cir. 2009) ............................................................. 22

*Hale v. City of Billings*,
    986 P.2d 413 (Mont. 1999) ........................................................... 12, 22

*Jorjani v. N.J. Inst. of Tech.*,
    2019 WL 1125594 (D.N.J. Mar. 12, 2019) ........................................ 23

*Keller v. Safeway Stores*,
 108 P.2d 605 (Mont. 1940)........................................................27, 28

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
 313 U.S. 487 (1941)...........................................................................11

*Kurth v. Great Falls Tribune Co.*,
 804 P.2d 393 (Mont. 1991)...........................................................13, 14

*La Liberte v. Reid*,
 966 F.3d 79 (2d Cir. 2020)................................................................23

*Lee v. Traxler*,
 384 P.3d 82 (Mont. 2016).................................................................13

*Lewis v. Reader's Dig. Ass'n, Inc.*,
 512 P.2d 702 (Mont. 1973)...............................................................19

*Lokhova v. Halper*,
 995 F.3d 134 (4th Cir. 2021) ............................................................30

*Madison v. Yunker*,
 589 P.2d 126 (Mont. 1978)...............................................................19

*Maloney v. Home & Inv. Ctr., Inc.*,
 994 P.2d 1124 (Mont. 2000)..............................................................26

*Mark v. Seattle Times*,
 635 P.2d 1081 (Wash. 1981) .............................................................20

*Milkovich v. Lorain Journal Co.*,
 497 U.S. 1 (1990)...............................................................21, 22, 25

*Mollett v. Netflix, Inc.*,
 795 F.3d 1062 (9th Cir. 2015) ...........................................................10

*Neubronner v. Milken*,
 6 F.3d 666 (9th Cir. 1993) ................................................................11

iv

*O'Brien v. City of Saginaw,*
    2011 WL 8143 (E.D. Mich. Jan. 4, 2011) .......................................... 24

*Phillips v. General Motors Corp.,*
    995 P.2d 1002 (Mont. 2000) .................................................... 11, 12, 14

*Pospisil v. First National Bank of Lewistown,*
    37 P.3d 704 (Mont. 2001) ............................................................... 26

*Puchalski v. Sch. Dist. of Springfield,*
    161 F. Supp. 2d 395 (E.D. Pa. 2001) ........................................... 24

*Rapaport v. Barstool Sports, Inc.,*
    2021 WL 1178240 (S.D.N.Y. Mar. 29, 2021) ................................ 25

*Ratner v. Kohler,*
    2018 WL 1055528 (D. Haw. Feb. 26, 2018) ................................. 17

*Stevens v. Tillman,*
    855 F.2d 394 (7th Cir. 1988) ........................................................ 25

*Sun Savings and Loan Ass'n v. Dierdorff,*
    825 F.2d 187 (9th Cir. 1987) ........................................................ 11

*Underwager v. Channel 9 Australia,*
    69 F.3d 361 (9th Cir. 1995) .......................................................... 22

## STATE CONSTITUTIONAL PROVISIONS

Montana Const. Article II § 7 .................................................................. 13

## FEDERAL STATUTES

Title 28 U.S.C. § 1291 .............................................................................. 4

Title 28 U.S.C. § 1332(a) ......................................................................... 3

## **STATE STATUTES**

Montana Code Ann. § 27-1802 .................................................. 19

## **FEDERAL RULES**

Federal Rules of Civil Procedure Rule 12(b)(6) ......................................... 7

## **OTHER AUTHORITIES**

Restatement (First) of the Law of Agency § 229 (1933)........................... 27

Restatement (Second) of Conflict of Laws § 6 ........................................ 12

Restatement (Second) of Torts § 566 ....................................................... 23

# INTRODUCTION

This appeal challenges the District Court's erroneous dismissal of Appellant Johnathan Talbot's ("Talbot") defamation and tortious interference claims against Appellees Manoah Ainuu ("Ainuu") and The North Face Apparel Corp. ("TNF"). The District Court made several critical errors in its decision: it applied Washington law instead of Montana law, it mischaracterized defamatory statements as non-actionable opinions, dismissed a valid tortious interference claim as duplicative, improperly precluded punitive damages, and for that TNF could not be vicarious liability for Ainuu's statements.

First, the court incorrectly determined that Ainuu's statements were non-actionable opinions. The context, content, and circumstances of Ainuu's statements inferred an actionable false and defamatory factual allegation – that Talbot assaulted Ainuu while making racist statements. Second, the court applied Washington law rather than Montana law despite the substantial connection of the events to Montana, the state where the incident occurred, where Talbot's reputation suffered the most harm, where Ainuu resides, and where Talbot resided until a mere weeks before moving to Washington. Third, the court dismissed Talbot's

2

tortious interference claim as duplicative of the defamation claim and rejected any punitive damages. Finally, the District Court concluded that TNF could not be vicariously liable for Ainuu's statements, even though TNF engages in public shaming of other companies in the name of social activism, explicitly directs its athletes to do the same, and one of its top executives endorsed Ainuu's defamatory comments about Talbot that form the basis of this case. Thus, Talbot plausibly alleged that Ainuu had apparent authority from TNF to engage in the conduct giving rise to this litigation.

The District Court's misapplication of law and mischaracterization of the facts ultimately led to the dismissal of Talbot's claims improperly. This appeal seeks to reverse the District Court's order and remand the case for further proceedings under the appropriate legal standards, ensuring justice for Talbot.

## JURISDICTIONAL STATEMENT

The United States District Court for the District of Montana had jurisdiction over this case pursuant to 28 U.S.C. § 1332(a), which grants federal courts jurisdiction in cases where the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different

states. Plaintiff Talbot was a citizen of Washington, while Defendants Ainuu and TNF were citizens of Montana and Delaware, respectively. ER-31-32. The amount in controversy in this case exceeds $75,000. ER-26. Jurisdiction over this appeal belongs to the Ninth Circuit Court of Appeals pursuant to 28 U.S.C. § 1291, as this matter involves an appeal from a final judgment issued by the District Court. The District Court's final judgment, dismissing Talbot's claims with prejudice, was entered on March 13, 2024. Talbot timely filed a notice of appeal on April 3, 2024. ER-115-117.

## ISSUES PRESENTED

I.  Whether the District Court erred in applying Washington law to the plaintiff's defamation and tortious interference claims, despite the events taking place in Montana and involving a Montana defendant.

II. Whether the District Court erred in determining that the statements made by Defendant Ainuu were non-actionable opinions, rather than defamatory statements of fact.

III. Whether the District Court erred in dismissing the tortious interference claim.

4

IV.    Whether the District Court erred in granting the motion to dismiss by concluding that Defendant TNF cannot be held vicariously liable for defamatory statements.

## STATEMENT OF THE CASE

This case arises from a series of defamatory statements made about Talbot by Ainuu, a professional mountain climber sponsored by TNF. The defamatory statements were disseminated via social media, causing significant reputational and economic harm to Talbot.

In the early summer of 2023, Talbot, a product manager at Outdoor Research LLC, traveled to Bozeman, Montana, for a professional focus group. ER-45. On June 20, 2023, after the day's events, Talbot encountered Ainuu, a sponsored climber for TNF, outside a local bar. Compl. ER-45. Talbot introduced himself and mentioned his employment at Outdoor Research. ER-45. This interaction quickly soured when Ainuu accused Talbot of being "racist and entitled" and continued to escalate inside the bar, where Ainuu falsely claimed that Talbot had made racist comments and Ainuu encouraged people in the bar to record Talbot. ER-45. Following this encounter, Ainuu posted a series of defamatory statements on his Instagram account, which has over 15,000 followers,

including TNF's official account. ER-45-52, ER-58-62. He claimed that Talbot had made racist remarks and assaulted him. ER-47-48. Those allegations were entirely fabricated; Ainuu later admitted to the HR Director of Outdoor Research that Talbot had not made any racist statements. ER-57.

Ainuu's social media posts quickly gained traction, leading to a wave of public backlash against him. ER-52-54. Ainuu's followers bombarded Outdoor Research with demands to fire Talbot. ER-52-54. The pressure mounted to such an extent that Outdoor Research placed Talbot on administrative leave the very next day and ultimately terminated his employment on July 14, 2023, citing the incident as the cause. ER-57-58. Despite knowing the truth, Ainuu continued to publicly malign Talbot, urging his followers to amplify the false narrative. ER-59-62. This ongoing smear campaign irreparably damaged Talbot's reputation, leaving him jobless and unable to find employment in his field. ER-62.

Ainuu's actions were not isolated; they were tacitly supported by TNF. ER-35. TNF has a broad strategy to promote the company's social justice image. ER-33-34. For example, TNF has publicly shamed other

6

companies that are not adequately in line with TNF's message of social justice, going so far as to publicly withdraw advertising from Facebook in response to what TNF perceived as inaction by Facebook in censoring allegedly racist content. ER-34. As part of that strategy, TNF has also knowingly allowed their sponsored athletes, including Ainuu, to engage in their own social justice-based attacks without consequence. ER-35-38, ER-42-43. In this very matter, TNF's Global Senior Athlete Coordinator, Dave Burleson, actually endorsed Ainuu's defamatory statements by republishing them on Burleson's own social media account, effectively legitimizing Ainuu's false accusations. ER-48. That endorsement provided Ainuu with the platform and credibility to spread his false narrative, knowing that it aligned with TNF's public stance on racism and social justice. ER-42. TNF's actions and inactions related to these social justice-themed attacks thus indicated implicit approval, highlighting the company's prioritization of its brand's social justice image over truth and fairness. ER-34-43.

Talbot filed a complaint in the District Court on October 2, 2023, alleging defamation and tortious interference against Ainuu and TNF. ER-63-76. The defendants moved to dismiss the complaint under Federal

Rule of Civil Procedure 12(b)(6). ER-124. Talbot opposed the motions. ER-127. On March 13, 2024, the District Court granted the defendants' motions, dismissing all claims with prejudice. ER-3. Talbot timely filed a notice of appeal on April 3, 2024. ER-115-117.

## SUMMARY OF THE ARGUMENT

I. The District Court erroneously applied Washington law to Talbot's defamation and tortious interference claims. Federal courts exercising diversity jurisdiction must apply the forum state's choice-of-law rules, which in this case is Montana. Montana follows the Restatement (Second) of Conflict of Laws, which requires applying the law of the state with the most significant relationship to the occurrence and the parties. The events that gave rise to this action occurred in Montana, and the defendant resides there, making Montana law the appropriate choice. Further, Montana has a state constitutional interest in adjudicating defamation that occurs in Montana. The District Court's reliance on case law related to product liability cases, rather than the specific constitutional provision for defamation in Montana, led to its erroneous application of Washington law.

II. The District Court erred in determining that Ainuu's statements were non-actionable opinions. The words, context, and circumstances of Ainuu's statements demonstrate that they were not mere opinions—they implied facts, namely that Talbot assaulted Ainuu while making racist comments. As a result, Ainuu's statements inflicted significant reputational harm on Talbot, making those statements defamatory. The District Court thus erred in dismissing Talbot's defamation claim, regardless of whether Montana or Washington law applied. Further, if Montana law applies, punitive damages are available to Talbot.

III. Because the District Court erred in dismissing Talbot's defamation claim, it also improperly dismissed his tortious interference claim. Ainuu's defamation was the predicate wrongful act that was intended to disrupt Talbot's business relationship and did, in fact, result in the termination of that relationship. If the Court overrules the District Court on its decision to dismiss Talbot's defamation claim, it should thus also overrule its decision to dismiss the tortious interference claim.

IV. The District Court erred in dismissing the vicarious liability claim against TNF by failing to recognize that Ainuu acted with apparent authority conferred by TNF. Despite Ainuu's status as an independent

9

contractor, TNF's explicit directives for social justice activism and its history of condoning similar conduct establish apparent authority. The Complaint details how TNF-sponsored athletes, including Ainuu, publicly attacked others for perceived racist conduct, benefiting TNF without reprimand. The court's focus on the lack of lawsuits against other companies linked in Ainuu's Instagram bio is a red herring, overlooking TNF's specific directives and endorsement of Ainuu's actions. Legal precedents support holding TNF liable under these circumstances, making the District Court's dismissal improper and necessitating reversal.

## STANDARD OF REVIEW

The appellate court reviews the District Court's decision to grant a motion to dismiss de novo. This standard requires accepting all factual allegations in the complaint as true and construing them in the light most favorable to the nonmoving party. *See Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 981 (9th Cir. 2017). A complaint should not be dismissed for failure to state a cause of action unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

10

*See Sun Savings and Loan Ass'n v. Dierdorff*, 825 F.2d 187, 191 (9th Cir. 1987); *Neubronner v. Milken*, 6 F.3d 666, 669 (9th Cir. 1993).

## ARGUMENT

### I. The District Court Erroneously Applied Washington Law Instead of Montana Law, Contrary to the Relevant Choice of Law Principles and the Facts of the Case

In diversity jurisdiction cases, federal courts must apply the forum state's choice-of-law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Aqua-Marine Constructors v. Banks*, 110 F.3d 663, 670 (9th Cir. 1997). Montana follows the Restatement (Second) of Conflict of Laws (1971) to resolve such disputes. *Buckles v. BH Flowtest Inc.*, 476 P.3d 422, 424 (Mont. 2020).

The Restatement (Second) of Conflict of Laws Section 6(1) provides that a court, subject to *constitutional* restrictions, will follow a statutory directive of its own state on choice of law. *Phillips v. General Motors Corp.*, 995 P.2d 1002, 1008 (Mont. 2000) (emphasis added).

In the absence of a constitutional or statutory directive, courts consider the following factors outlined in Restatement § 6(2): (a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states

11

and the relative interests of those states in the determination of a particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability, and uniformity of result; and (g) ease in the determination and application of the law to be applied. Restatement (Second) of Conflict of Laws § 6(2). Additionally, the Montana Supreme Court has emphasized that "[a]ny analysis under the Restatement approach is necessarily driven by the unique facts, issues, applicable law, and jurisdictions implicated in a particular case." *Phillips v. General Motors Corp.*, 995 P.2d at 1007.

## A. The Choice Of Law Determination Is A Question For The Jury

The Montana Constitution entitles defamation plaintiffs to a jury trial if their claims have adequate evidentiary support under Montana law. *See, e.g., Hale v. City of Billings*, 986 P.2d 413, 417-18 (Mont. 1999) (reversing dismissal of plaintiff's defamation claim because city's allegations that plaintiff was a fugitive and a "most-wanted" suspect were potentially false).

12

As part of that constitutional protection for defamation claimants, Montana has a specific constitutional protection, highlighted in Restatement § 6(1), that governs the choice of law in defamation cases. Thus, unlike other tort cases, Montana's Constitution provides a clear directive that "[i]n <u>all</u> suits ... for libel or slander... the <u>jury</u>, under the direction of the court, <u>shall determine</u> the <u>law</u> and the <u>facts</u>." MONT. CONST. art. II, § 7 (emphasis added). This constitutional restriction places the determination of the applicable law for defamation cases within the province of the jury, with the Montana Supreme Court interpreting the provision as "plac[ing] the heart of any determination regarding defamatory libel directly within the province of the jury." *Lee v. Traxler*, 384 P.3d 82, 86 (Mont. 2016). Consequently, in a Montana forum, "due to the unique nature of cases involving libel, a District Court should take particular care" before dismissing such cases at the pre-trial stage. *Id.* Simply put, a jury's authority under the Montana Constitution to "determine the law" in a defamation case necessarily includes authority to determine the choice of law.

In this case, the District Court relied on *Kurth v. Great Falls Tribune Co.,* 804 P.2d 393, 395-96 (Mont. 1991) and incorrectly concluded

13

that Montana's Constitution does not require a jury to determine the choice of law question. ER-20-21. While that case made clear that the court retains the power in defamation cases to pass on various motions and other evidentiary issues, it held that certain substantive legal questions of fact and law in a defamation case, unlike other states, are for the jury to decide. *Kurth*, 804 P.2d at 395-96. (holding that, unlike in other states, it is the province of the jury to determine whether a plaintiff is a public figure in a defamation case).

The District Court thus erred in not allowing the jury to hear evidence and decide which state's law should apply to the facts and circumstances of the defamation giving rise to this litigation.

## B. The District Court Erred in Its Application of the Restatement's Choice of Law Principles to the Case, Warranting Reversal Due to an Erroneous Application of Law to the Facts

Even if the District Court were correct in deciding the choice of law question, a proper application of the Restatement factors requires the application of Montana law. In tort cases, Montana courts look to Restatement, §§ 145-46, to determine which state has "the most significant relationship to the occurrence and the parties." *Phillips*, 995

14

P.2d at 1007. This requires courts to analyze where the injury occurred, where the conduct causing the injury occurred, the domicile and residence of the parties, and where the relationship between the parties is centered. Restatement (Second) of Conflict of L. § 145.

Further, "[i]n the majority of instances, the actor's conduct, which may consist either of action or non-action, and the personal injury will occur in the same state. In such instances, the local law of this state will usually be applied to determine most issues involving the tort." *Id.* at §146 cmt. d. That is because "the state where the injury occurs will, usually at least, have the dominant interest in determining whether the interest affected is entitled to legal protection."

In this case, both the events giving rise to the dispute occurred in Montana, and the defendant resides in Montana, thus supporting the application of Montana law. The relationship and all interactions between Talbot and Ainuu were centered in Bozeman, Montana. They met there for the first time, outside of a bar on June 20, 2023, and that is where the conflict occurred. ER-44-45. Additionally, Ainuu is a resident of Bozeman, Montana, his Instagram highlights his Montana residence, he used that same Instagram account to defame Talbot while both were

15

physically present in Montana, and he directed his defamatory statements to damage Talbot to a Montana audience, as demonstrated by the repeated Instagram references Ainuu made in his posts about Talbot being from Montana. ER-31, ER-45-52, ER-60. Talbot had only recently moved from his home of Bozeman to Washington State in June of 2023 for his new job at Outdoor Research. ER-44, ER-97. Montana has an interest in ensuring its laws apply to its citizens and their actions in Montana. The facts thus establish that the state with the most significant relationship to the occurrence and the parties is Montana.

The Restatement's commentary supports this conclusion, noting that a state that is not the plaintiff's domicile may have the most significant relationship if it is where the defamatory communication caused the greatest injury to the plaintiff's reputation. Restatement 2d of Conflict of Laws, § 150(2) cmt. e reads: "[a] state which is not the state of the plaintiff's domicile, may be that of most significant relationship if it is the state where the defamatory communication caused the plaintiff the greatest injury to his reputation. This may be so, for example, in situations where (a) the plaintiff is better known in this state than in the state of his domicile, or (b) the matter claimed to be defamatory related

16

to an activity of the plaintiff that is principally located in this state, or (c) the plaintiff suffered greater special damages in this state than in the state of his domicile, or (d) the place of principal circulation of the matter claimed to be defamatory was in this state." The District Court mentioned cmt. e in passing, but ultimately relied on *Ratner v. Kohler,* which is distinguishable from the present case. Doc. 38 at 8 (citing *Ratner v. Kohler*, No. CV 17-00542 HG-KSC, 2018 WL 1055528 (D. Haw. Feb. 26, 2018)).

In *Ratner*, the court applied the Hawaii conflict of law rules to determine the applicable substantive law. *Ratner v. Kohler*, No. CV 17-00542 HG-KSC, 2018 WL 1055528, at 6. After the court in *Ratner* determined Hawaii's choice of law followed comment (e) described in the above paragraph, the court held that there was no basis to find that Plaintiff is more well-known in Hawaii than in California, with the claim only relying on the defendant being in Hawaii when making the online post. *Id.* at 5-6. In *Ratner*, the claimant lived and worked in California, and the conduct occurred in California, with the defamatory statements posted by a person in Hawaii. *Id.* at 5. The Hawaii court applied California law because California was where damages were most likely

17

to occur because that is where the claimant resided and conducted business. *Id.* at 6.

In contrast, Talbot's longtime primary residence was in Montana just before the defamatory statements were made, and his reputational interests were centered in Montana. ER-44, ER-97. Unlike *Ratner*, where the connection to the forum state (Hawaii) was only based on where the defamatory statements were made, the connections to Montana in Talbot's case are robust. The events occurred in Montana, the defendant is a Montana resident, and the defamatory statements targeted Talbot's reputation within Montana. The only tie this case has to Washington is Talbot's relocation to that state a few weeks before Ainuu began defaming him, ultimately resulting in Talbot being fired from the job for which he left Montana in the first place.

The District Court, therefore, misapplied the Restatement factors and, as a result, erroneously applied Washington law.

## II. The District Court Erred in Determining That the Statements Made by Ainuu Were Non-Actionable Opinions

The District Court also erred in concluding that Ainuu's publications were non-actionable opinions. Rather, under either

18

Montana or Washington law, Ainnu's statements implied false and defamatory allegations of fact that Talbot *made racist statements* and *assaulted him*. Further, to the extent Ainuu's statements could be considered opinions, they were not pure opinions but actionable mixed opinions.

## A. Ainuu Implied False and Defamatory Allegations of Fact

To state a claim for defamation, the Montana Supreme Court has held that "[t]he underlying purpose of libel laws is to furnish a means of redress for defamation. Every person is entitled to enjoy his reputation unimpaired by false and defamatory remarks." *Lewis v. Reader's Dig. Ass'n, Inc.*, 512 P.2d 702, 705 (Mont. 1973). The elements of an action to redress those rights under Montana law are "a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation that exposes any person to hatred, contempt, ridicule, or obloquy or causes a person to be shunned or avoided or that has a tendency to injure a person in the person's occupation." Mont. Code Ann. § 27-1-802; *see also Madison v. Yunker*, 589 P.2d 126, 133 (Mont. 1978) (To state a defamation claim a private plaintiff must prove "(1) that the published material was false; (2) that defendants are chargeable with

19

fault in the publication; and (3) that actual injury to him ensued, for which he may recover his actual damages. Moreover, (4) if he proves that the publication was made by defendants with knowledge of its falsity or in reckless disregard for the truth or falsities thereof, he may recover punitive damages for such malice, but such malice does not include hatred, personal spite, ill-will, or a desire to injure.").

Likewise, the Washington Supreme Court has held that a prima facie defamation claim requires: "falsity, an unprivileged communication, fault, and damages." *Mark v. Seattle Times*, 635 P.2d 1081, 1088 (Wash. 1981); *see also Alpine Indus. Computers, Inc. v. Cowles Pub. Co.*, 57 P.3d 1178, 1183 (Wash. Ct. App. 2002), *amended,* 64 P.3d 49 (Wash. Ct. App. 2003) ("To establish a prima facie defamation claim, the plaintiff must show (1) that the defendant's statement was false, (2) that the statement was unprivileged, (3) that the defendant was at fault, and (4) that the statement proximately caused damages.").

The Complaint has more than adequately pled facts that satisfy the standards in both states. It demonstrates that Talbot was exposed to hatred, contempt, ridicule, obloquy, and that Ainuu's statements caused him to be shunned, avoided, and injured in his reputation and occupation.

20

Specifically, Talbot alleges in his Complaint that Ainuu posted on Instagram that Talbot had approached him in Bozeman, "tried to fight [Ainuu] after saying racist things," "initiated a fight," "assaulted" Ainuu, and was one of "the racists in outdoor industry." ER-46-48, ER-60. He also published numerous other supplemental posts further implying that Talbot had made racist statements accompanied by threats of violence towards Ainuu. ER-49-51, ER-56, ER-60. Those are statements of fact, and a jury should make the factual determination as to whether or not Talbot made racist comments and assaulted Ainuu.

### B. Ainuu's Statements Are Actionable Mixed Opinion

To the extent that Ainuu statements include his "opinion," such statements are still actionable as mixed opinions based on undisclosed facts.

In *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18 (1990), the Supreme Court expressly rejected the notion that statements of opinion are categorically protected under the First Amendment. Instead, the Court held that the critical inquiry is whether a reasonable factfinder could conclude that the statement implies an assertion of objective fact. *Id.* at 19-20. Explaining the concept, the Supreme Court noted that "[i]f

21

a speaker says, 'In my opinion John Jones is a liar,' he implies a knowledge of facts which lead to the conclusion that Jones told an untruth. Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact." *Id.*

The Ninth Circuit emphasized the importance of context in determining whether a statement constitutes a non-actionable opinion or an actionable assertion of fact. In *Gardner v. Martino*, 563 F.3d 981, 987 (9th Cir. 2009), the Court noted that the totality of the circumstances, including the context of the statement, must be examined to determine if it implies an assertion of objective fact. Additionally, in *Underwager v. Channel 9 Australia*, 69 F.3d 361, 366 (9th Cir. 1995), the Court highlighted the necessity of considering the medium and audience of the statement and whether the statement implies undisclosed facts.

It is also well-settled in both Montana and Oregon that statements of mixed opinion are actionable. In *Hale v. City of Billings*, 986 P.2d 413, 419 (Mont. 1999), the Montana Supreme Court held that "if an opinion is not based on disclosed facts, and as a result creates the reasonable

22

inference that the opinion is based on undisclosed defamatory facts, such an opinion is not afforded constitutional protection."

Similarly, in *Dunlap v. Wayne*, 716 P.2d 842, 848 (Wash. 1986), the Washington Supreme Court adopted the Restatement (Second) of Torts § 566. *Dunlap*, 716 P.2d at 848. Section 566 states that "defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion."

Courts applying *Milkovich* have routinely held that accusations that someone engaged in specific racist conduct or speech, where those accusations imply the existence of undisclosed defamatory facts, can be actionable defamation on the grounds that they are mixed opinions. *See La Liberte v. Reid*, 966 F.3d 79, 87 (2d Cir. 2020) (accusation that someone engaged in concrete, racist conduct can be proven either true or false and is thus an actionable claim of defamation); *Davis v. Cornely*, 2021 WL 4805119, at *4 (N.D. Ohio Oct. 14, 2021) (plaintiff stated a claim for defamation where the defendant accused him of making racist and threatening remarks); *Jorjani v. N.J. Inst. of Tech.*, 2019 WL 1125594, at *4 (D.N.J. Mar. 12, 2019) ("if the statement falsely implies someone

engaged in specific acts (e.g., made racist statements or refused to employ a certain race), it may be defamatory"); *O'Brien v. City of Saginaw*, 2011 WL 8143, at *2 (E.D. Mich. Jan. 4, 2011) (denying defendant's motion to dismiss on the grounds that the defamatory accusation of racism implied the existence of undisclosed defamatory facts); *Puchalski v. Sch. Dist. of Springfield*, 161 F. Supp. 2d 395, 400 (E.D. Pa. 2001) (stating that someone made a racist remark is capable of defamatory meaning and actionable).

The statements about Talbot's conduct, such as accusing him of making racist remarks and attempting to instigate a physical confrontation, rely on specific, undisclosed, factual assertions. The readers of Ainuu's comments clearly did not infer that his accusations were merely "just his opinion," but rather a reaction to very specific and undisclosed racist statements allegedly made by Talbot, who also allegedly engaged in physical behavior that suggested assault. ER-52-54.

Compare the facts and circumstances of this case with the overwhelming majority of cases cited by the District Court. In those cases, the speaker actually disclosed the detailed facts upon which the opinion was based, or the facts were already well known to the public

24

because of significant news coverage. ER-20; *see, e.g., Rapaport v. Barstool Sports, Inc.*, 2021 WL 1178240, at *2 (S.D.N.Y. Mar. 29, 2021) (the speaker's statements are not mixed opinion because they do not imply existence of undisclosed facts); *Stevens v. Tillman*, 855 F.2d 394, 401 (7th Cir. 1988) (defendant's statement was a non-actionable statement of opinion where the facts upon which the opinion was based were fully and specifically disclosed).

Here, Ainuu did not accompany his comments with a video of the interaction, nor did he say what Talbot actually said to him. Ainuu simply gave a vague explanation of an interaction that he claimed involved racist comments and assault, thereby depriving his readers of being able to assess whether his "opinion" was justified or erroneous. This is exactly the situation that the Supreme Court described as unprotected mixed opinion in *Milkovich*. 497 U.S. at 19.

Consequently, the District Court erred in holding that Ainuu's publications were protected statements of opinion as opposed to unprotected assertions of undisclosed facts masked as "opinions."

25

### III. The District Court Erred in Dismissing the Tortious Interference Claim

The District Court erroneously dismissed Talbot's tortious interference claim because it incorrectly dismissed his defamation claim, thus eliminating the predicate wrongful conduct requirement for tortious interference.

Tortious interference requires (1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship by the defendant, (3) intentional interference causing a breach or termination of the relationship or expectancy, and (4) resultant damage to the plaintiff. *Maloney v. Home & Inv. Ctr., Inc.*, 994 P.2d 1124, 1132 (Mont. 2000). Further, "to establish a cause of action, it must be shown that the actor intentionally committed a wrongful act without justification or excuse." *Pospisil v. First National Bank of Lewistown*, 37 P.3d 704, 707 (Mont. 2001).

Because Montana law applies and Talbot has sufficiently alleged facts supporting his defamation claim, he has also set forth facts that

support his claim that Ainuu wrongfully defamed Talbot with the intent to pressure Outdoor Research to terminate him. ER-46-48, 57-62.

Consequently, Talbot has stated a claim for tortious interference.

## IV. The District Court Erred in Determining That TNF Is Not Vicariously Liable for Ainuu's Defamation and Tortious Interference

The District Court erred in granting TNF's motion to dismiss by concluding that TNF cannot be held vicariously liable for Ainuu's unlawful defamation and tortious interference. Despite acknowledging that Ainuu serves as an independent contractor rather than an employee, Talbot has sufficiently pled that TNF vested Ainuu with apparent authority, making TNF liable for Ainuu's defamatory statements.

Under Montana law, a principal can be held liable for the defamatory statements of its agent, regardless of the agent's status as an independent contractor, if the agent is acting with apparent authority. *Keller v. Safeway Stores*, 108 P.2d 605, 610 (Mont. 1940). In *Keller*, the Montana Supreme Court adopted the Restatement (First) of the Law of Agency § 229 (1933) and held that the proper inquiry to determine whether a principal can be held liable for the defamatory statements of its agent depends on "(a) Whether or not the act is one commonly done by

27

such servants; (b) the time, place and purpose of the act; (f) whether or not the master has reason to expect that such an act will be done; and (i) the extent of departure from the normal method of accomplishing an authorized result." *Id.* at 611.[1] Thus in *Keller*, the Montana Supreme Court held that a principal can be held liable for defamatory statements if they are incidental to the agent's employment. This principle was echoed by the U.S. Supreme Court in *Am. Soc. of Mech. Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 566 (1982), which held that a principal is liable for the defamatory statements of an agent as long as the agent was apparently authorized to make the statement or tortiously injures the business relations of a third person.

Talbot's Complaint alleges facts that establish Ainuu acted with apparent authority. TNF explicitly directed its sponsored athletes to engage in social justice activism "not only within the Company, but within the communities where we live and work." ER-33-34. This directive inherently includes public communications, such as those made by Ainuu on social media.

---

[1] While the Restatement sets forth a list of considerations from (a) to (j), the Court limited its inquiry to sections (a), (b), (f), and (i).

The Complaint details instances where TNF-sponsored athletes made public statements attacking others for perceived racist conduct in line with the company's values and interests. ER-33-38. For example, TNF-sponsored skier Vasu Sojitra attacked directors and sponsors of a film for exhibiting a "white savior complex," among other online attacks, and received no reprimand from TNF despite complaints. ER-35-38. That unfounded attack, which garnered significant media coverage, was aligned with the directives of the parent company to subsidiaries, like TNF, to bring social justice "within the communities where we live and work." ER-33. The attacks also fell within the business operations benefiting TNF financially because the statements were aimed at competitors, specifically at La Sportiva. ER-36-37. This pattern of behavior establishes an expectation that such conduct is not only tolerated but encouraged by TNF for financial gain.

TNF has also failed to reprimand Ainuu for similar inappropriate conduct masked in the guise of social activism. In February 2020, Ainuu accused La Sportiva-sponsored climber Ari Novak of engaging in racist conduct. ER-43. Novak's "racist conduct" was identifying Ainuu's night climbing with Novak's 16-year-old female student/mentee as reckless

behavior and preventing the climb because Ainuu appeared to be intoxicated. ER-43. Yet, despite TNF being informed of this embarrassing incident, it took no action against ER-43. This inaction can reasonably be interpreted as implicit approval of Ainuu's conduct.

Indeed, Ainuu's defamatory statements about Talbot were part of a broader social justice initiative promoted by TNF, which includes calling out other companies by publicly shaming them via press release. ER-40-41. And when Ainuu took it upon himself to call out a competitor's employee (the Plaintiff), in the name of social justice, TNF's Senior Athlete Coordinator, Dave Burleson, was right there to support and amplify Ainuu's actions by reposting one of Ainuu's defamatory posts attacking Talbot. ER-48.

The District Court's reliance on *Lokhova v. Halper*, 995 F.3d 134 (4th Cir. 2021), is misplaced. In *Lokhova*, the Fourth Circuit found insufficient evidence to establish apparent authority based solely on an independent contractor's Twitter bio mentioning MSNBC. However, the facts in the present case are materially different. Unlike *Lokhova*, Ainuu's conduct was directly aligned with TNF's business interests,

30

public directives, past conduct, and was implicitly endorsed by TNF's inaction and active promotion of similar behavior by its athletes.

Given TNF's explicit directives and actions to call out other companies in the names of social justice, its past inaction in the face of similar conduct from other sponsored athletes, its failure to reprimand Ainuu for similar behavior, and TNF management explicitly amplifying and endorsing Ainuu's attack on Talbot, there are sufficient facts from which a jury could deem TNF vicariously liable for Ainuu's defamatory statements. The District Court's dismissal on this ground was thus in error and should be reversed.

## CONCLUSION

The District Court's dismissal of Talbot's claims was erroneous in multiple respects. The court applied the wrong state law to Talbot's defamation and tortious interference claims, mischaracterized Ainuu's statements as non-actionable opinions, improperly dismissed Talbot's tortious interference claim, and improperly held that TNF cannot be liable for Ainuu's wrongful acts. Each of these errors deprived Talbot of his rightful claims under Montana law. The case should be remanded for further proceedings consistent with the proper application of Montana

31

law, allowing Talbot to seek redress for the full extent of the harms he has suffered.

Date: September 6, 2024

Respectfully submitted,

/s/ *Ian Prior*
Ian Prior
Nicholas Barry
America First Legal Foundation
611 Pennsylvania Ave., SE #231
Washington, D.C. 20003
(571) 639-6711
Ian.Prior@aflegal.org

*Counsel for Plaintiff-Appellant*

Matthew Monforton
Monforton Law Offices
32 Kelly Ct.
Bozeman, MT 59718
(406) 570-2949
matthewmonforton@yahoo.com

*Counsel for Plaintiff-Appellant*

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, counsel for Plaintiffs-Appellants is unaware of any related cases pending in this Court.

*/s/ Ian Prior*
Ian Prior

*Counsel for Plaintiffs-Appellant*

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Circuit Rule 32-1 because:

    ☒   this brief contains <u>5,693</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), *or*

    ☐   this brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    ☒   this brief has been prepared in a proportionally spaced typeface using <u>Microsoft Word 2016</u> in <u>14-point Century Schoolbook</u>, *or*

    ☐   this brief has been prepared in a monospaced spaced typeface using (state name and version of word processing program) _ _____ with (state number of characters per inch and name of type style) _____ _____ _____.


>                                   */s/ Ian Prior*
>                                   Ian Prior
>                                   *Counsel for Plaintiffs-Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of September 2024, I electronically filed the foregoing brief with the Clerk of the Court of the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

September 6, 2024

*/s/ Ian Prior*
Ian Prior

*Counsel for Plaintiffs-Appellant*