Cause No. 24-2038 [consolidated with Cause Nos. 24-2135 and 24-2144]

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

JOHNATHAN TALBOT,

        Plaintiff-Appellant/Cross-Appellee,

    v.

MANOAH AINUU and THE NORTH FACE APPAREL CORP.,

        Defendant-Appellees/Cross-Appellants.

---

## FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MONTANA, BUTTE DIVISION
## U.S. District Court Cause No. 2:23-CV-00066-BU-BMM

---

## Appellee/Cross-Appellant Manoah Ainuu's
## Cross-Appeal Reply Brief

---

James H. Goetz
Jeffrey J. Tierney
Henry J.K. Tesar
GOETZ, GEDDES & GARDNER, P.C.
35 N Grand Ave PO Box 6580
Bozeman, MT 59771-6580
Ph:   (406) 587-0618
Email:  jim@goetzlawfirm.com
        jtierney@goetzlawfirm.com
        htesar@goetzlawfirm.com

*Attorneys for Appellee/Cross-Appellant Manoah Ainuu*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................3

INTRODUCTION........................................................................... 4

I.    How people of color are treated related to their involvement in historically White activities and industries is a matter of public concern. ..... 6

II.    Ainuu's speech following his encounter with Talbot related to social justice and systemic racism................................................. 11

CONCLUSION................................................................................ 16

# TABLE OF AUTHORITIES

*Dunlap v. Wayne*, 716 P.2d 842 (Wash. 1986)……………………………...……..15

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974)…………………………..…………15

*Hale v. City of Billings*, 1999 MT 213, 986 P.2d 413 (Mont. 1999)…………………..15

*Hernandez v. City of Phoenix*, 43 F.4th 966 (9th Cir. 2022)…………………………11

*Jha v. Khan*, 520 P.3d 470 (Wash. App. 2022)………………………………..4, 11

*Rankin v. McPherson*, 483 U.S. 378 (1987)……………………………………………11

*Snyder v. Phelps*, 562 U.S. 443 (2011)…………………………………………………11

## INTRODUCTION

Talbot misses the mark in arguing that Manoah Ainuu's speech is not protected by the Washington Anti-SLAPP Act. The Act broadly protects any speech that "**can be fairly considered as relating to any matter** of political, social, or other concern to the community." *Jha v. Khan*, 520 P.3d 470, 477–78 (Wash. App. 2022) (emphasis added). The Act and the scope of the speech it protects are broadly construed as a matter of law and Washington public policy.

***

The Rule 12 record before the Court is limited but, taking Talbot's allegations as true, the following is clear:

Talbot was in Bozeman on a business trip, conducting a focus group for his employer Outdoor Research. ER-44, ¶ 54. Upon leaving a team dinner after the focus group, Talbot saw Ainuu—who Talbot did not know—in front of a local bar and decided to strike up a conversation. ER-44, ¶ 57.

The only specifics that Talbot relays from their initial "brief conversation" is that he felt compelled to tell a Black athlete whom he had only just met that he, Talbot, "had been on the diversity, equity, and inclusion committee" at his previous job, ER-107, ¶ 18, and that Ainuu concluded, from their interaction, that he believed Talbot was "racist and entitled." ER-45, ¶ 58. Ainuu then disengaged

4

from the conversation and attempted to retreat, *id.* ¶ 59, only to have Talbot pursue him into a nearby bar where he attempted to continue the conversation so Talbot could satisfy his own need to "understand Ainuu's anger and allegations of racism[,]" escalating the dispute. ER-45, ¶¶ 59–62.

Ainuu later posted on his personal Instagram account, relaying his perception of his meeting with Talbot as an example of a paradigm that Ainuu has been discussing publicly for years: marginalization of people of color in the (historically White) outdoor sports community.

Plainly, Ainuu's speech related to issues of racism and diversity in outdoor sports and in general which are matters of political, social, or other concern to the community. It is public speech on a matter of public concern, well within the scope of the deliberately broad free speech protections afforded by Washington law.

In his bid to avoid the Washington Anti-SLAPP Act, Talbot attempts to characterize the dispute as a purely private one, neglecting his own allegations and framing of the issues which paint a very different picture. For the reasons stated below and The North Face's brief,[1] this Court should reject Talbot's arguments, reverse the district court's ruling that the Washington Anti-SLAPP Act does not

---

[1] To avoid duplication and expense, Ainuu joins The North Face's arguments made in its Reply Brief ("TNF Reply Br.") (Dkt. 41.1).

apply, and remand for an award of Ainuu's reasonable attorneys' fees and costs.

I.    **How people of color are treated related to their involvement in historically White activities and industries is a matter of public concern.**

There is no serious question that the dispute between Talbot and Ainuu, and the subsequent public discourse, was related to a broader social and political dialogue about race and diversity. It is plastered all over Talbot's Complaint which, in an attempt to demonize Ainuu and TNF and politicize Talbot's cause, frames the entire dispute around the parties' competing views about racism, diversity, equity and inclusion. Talbot alleged, for example, that:

- "Ainuu intentionally and recklessly made . . . false and defamatory statements to destroy Mr. Talbot's reputation and career, thereby increasing his own fame and serving North Face's commercial interest **by promoting its cynically false 'social justice mission**.'" ER-30, ¶ 3 (emphasis added);

- V.F. Corporation, TNF's parent company, "'is committed to maximizing inclusion, diversity, and equity not only within the Company, but within the communities where we live and work.'"ER-33, ¶ 16; *see also id.* ¶¶ 14–15;

- "To help execute the mission of its parent company, Defendant [TNF] sponsors athletes who lend credibility to its products and serve as brand ambassadors." ER-34, ¶ 17;

- "Since at least 2018, Defendant Ainuu has been a [TNF] sponsored 'athlete'

6

highlighted on [TNF's] website." ER-38, ¶ 31;

- Ainuu uses his Instagram account to "post photos of his activities as a North Face-sponsored athlete and to make statements about 'social justice' and 'systemic racism.'" *Id.* ¶ 33;

- "In 2021, he starred in a film entitled 'Black Ice,' which CNN described as a film about 'climbers aiming to boost diversity.'" *Id.* ¶ 35 (citation omitted);

- He also attended "events like Color the Crag, an annual festival celebrating diversity in climbing." ER-41, ¶ 43.[2]

Talbot further alleged: Ainuu has a mission of bringing social justice to communities, ER-40, ¶ 39, Ainuu uses "his public platform to speak out against what he defines as racism[,]" ER-42, ¶ 45, and Ainuu frequently uses his Instagram account to make claims about racism in America, *id.* ¶ 46.

One article cited by Talbot's Complaint, ER-39, ¶ 35, titled *'It was super cool*

---

[2] *See also* Spencer Lindquist, *EXCLUSIVE: A Black Mountain Climber Ruined a Man's Career With False Accusations of 'Racism,' Lawsuit States*, THE DAILY WIRE, https://www.dailywire.com/news/a-black-mountain-climber-ruined-a-mans-career-with-false-accusation-of-racism-lawsuit-states (Oct. 3, 2023) ("Much of Ainuu's public image appears to be built around his stated effort to diversify the sport of ice climbing, with one article highlighting his climb to the summit of Mount Everest with an all-black team as a feat that showed 'the continued diversification of a historically white activity.' He bemoaned the challenges of living in a predominantly white area, Bozeman, with CNN reporting that it 'weighs heavily' on the young climber.").

*just having that much melanin in Montana': The climbers aiming to boost diversity*, had

the following to say about Ainuu and his lived experience as a Black climber:

> Whether it's a comment about his hair or questioning his expertise, professional ice climber Manoah Ainuu is aware that people notice the difference.
>
> Born to first-generation immigrants from Samoa and Ethiopia, the 26-year-old grew up in the outskirts of Los Angeles but later moved to Bozeman, Montana, when he went to college.
>
> It was there that he fell in love with the outdoors and the spectacular ice climbing opportunities Montana has to offer.
>
> Ainuu taught himself how to climb and is now a seasoned professional, embarking on trips across the United States[.]
>
> But he says living in a predominately White area, whilst taking part in a sport with few other Black athletes, weighs heavily on him.
>
> Despite not recalling any overtly racist incidents, the climber says it is more an accumulation of "micro-aggressions" from both the local and climbing community, such as people commenting on his dreadlocks.
>
> "Most people are like 'Oh, it's a compliment, it's kindness,' but what it happens to be is kind of backhanded," Ainuu tells CNN Sport. "They're seeing that you're different and feel like they have to say something about it.
>
> "I'm pretty mellow, so I just ignore a lot of stuff. If someone says some stupid racist thing, I'm like: 'Whatever, I've heard this before.'

8

"But it really does weigh down on you. It all builds up and whether a person handles that by bottling it up or ignoring it, there's still an effect."

. . . Now a member of the North Face's elite climbing team, Ainuu wants to change the narrative around outdoor adventure sports.

"I don't really like being in the spotlight, having all this attention brought to me, but what I've realized is [...] there are so many people that are looking up to me [...] and all these other Black and African-American climbers or athletes or musicians," he says.

"Just seeing someone that looks like you, doing something and excelling at it is extremely empowering."

Ben Church, *'It Was Super Cool Just Having That Much Melanin in Montana': The Climbers Aiming to Boost Diversity*, CNN (March 19, 2021), https://www.cnn.com/2021/03/19/sport/black-ice-climbing-diversity-cmd-spt-intl/index.html.

In another article cited by Talbot, *see* ER-40, ¶ 37(c), Ainuu discussed a then-upcoming (now completed) expedition to Mount Everest as part of the first ever all-Black team to attempt to summit the world's highest Mountain. Ainuu explained:

"We had that shared experience of just standing out and being the only person that was Black, that had dark skin, doing their thing in the outdoors[.]"

. . . "Even though I'm confident in climbing and all that, it just doesn't feel comfortable because an old white gentleman might say something or question my knowledge or experience, which happens quite often[.] . . . I've come

9

to realize through those experiences that having all the newest, nicest gear… people don't even look at that, they just look straight at your skin color and then they start interrogating you."

Ainuu is hopeful that his team's story "will dispel a lot of that" because he hates seeing his friends experience discrimination while doing the thing they love.

. . . "I think for a lot of us at Full Circle, our place in the outdoors is usually defined as like, 'Oh yea, the Black climber, Black skier'[.]" . . . "But one of the good things about social media, it connected a lot of us."

Topher Gauk-Roger, *Meet the First All-Black Group of Climbers Attempting to Summit Mount Everest: 'It's Really Powerful'*, PEOPLE MAGAZINE (Feb. 22, 2022), https://people.com/podcasts/meet-the-first-all-black-group-of-climbers-attempting-to-summit-mount-everest/.

Besides treating "social justice" as a pejorative, Talbot does not (and cannot credibly) argue that social justice and systemic racism—and government and corporate efforts to be inclusive, whether called "DEI" or something else—are matters of purely private concern. They are issues of significant public concern, as the Ninth Circuit has recognized and the district court correctly concluded in this case, ER-14, and Ainuu is a demonstrated participant in the public dialogue about racism and diversity in outdoor spaces, of which this dispute is a part. *See* Talbot Reply Brief (Dkt. 41.1).

10

II.    **Ainuu's speech following his encounter with Talbot related to social justice and systemic racism.**

That Ainuu's public speech stemmed from his interaction with Talbot is not disqualifying under the Washington Anti-SLAPP Act and does not deprive Ainuu of the Act's protections. The law and common sense dictate that speech about personal experiences often relates to matters of public concern. In drawing the distinction between public and private matters, courts review the "content, form, and context" of the speech, "as revealed by the whole record." *Jha*, 520 P.3d at 477–78. The inquiry is not rigid: speech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community. *Id.*[3]

Here, it is apparent that Ainuu's speech related to the broader issues of social justice and systemic racism that he has publicly discussed for years. Apart from the

---

[3] As TNF explains more fully in its brief, value judgments do not play a role in answering whether speech dealt with a matter of public concern. *Snyder v. Phelps*, 562 U.S. 443, 454–55 (2011) (even overtly hateful speech denigrating gay men as a means of protesting the United States' tolerance of "homosexuality in the military" qualified as speech on a matter of public concern); *Rankin v. McPherson*, 483 U.S. 378, 387 (1987) (the "inappropriate or controversial character of a statement is irrelevant" and speech expressing hope that a second attempt at assassinating the president would prove successful qualified as speech on a matter of public concern); *Hernandez v. City of Phoenix*, 43 F.4th 966, 978 (9th Cir. 2022) (speech that "expressed hostility toward and sought to denigrate or mock a major religious faith and its adherents" was protected speech on a public matter).

numerous contextual indicators discussed in the prior briefs and above, he said so expressly:

- "Also, if anyone thinks I'm being extra, check your thoughts. My work is to change the outdoor industry[.]" ER-51, ¶ 68(c);

- "Our outdoor industry microcosm can't have people like this." ER-50, ¶ 68(b);

- "This is not just for me, it's for Us all." ER-28, ¶ 72.

    This is further confirmed by responses in support of and in opposition to the opinions Ainuu expressed. For example:

- "Brands that knowingly employ individuals with racist tendencies - are enablers." ER-53, ¶ 69(b);

- "US mountain towns can be very difficult to live in for a person of color. *** Yeah the blame can be pointed at the individual. The Jonathan's of the world. But I really want us to be critical of how these Jonathan's have been created. *Id.* ¶ 69(c);

- "Hold your employees accountable and do the right thing!! The outdoor community and the world are looking at you. Be the change!! Set the standard that bigotry and hatred is not tolerated." ER-54, ¶ 69(f);

12

- "Lightweight? Sounds like OR's commitment to making the outdoors and its gateway communities a friendly environment for everyone." *Id.* ¶ 69(g);

- "For those that have messaged our social accounts, emailed us, or contacted customer service, you are heard. OR does not support discriminatory conduct based on race or any other reason, and we take these matters very seriously." ER-55;

- "Pushing for equality of outcome is the bane of our current society." ER-113.

Contrary to Talbot's narrative that he is the victim of a one-sided attack, Talbot himself participated in this debate and, indeed, worked to escalate and further politicize the public discourse. He engaged a well-known, ideologically-motivated public interest law firm, with well-advertised sensibilities about these issues,[4] to attempt to counter Ainuu's narrative through press releases and by engaging politically favorable mass media outlets:

- "All it takes is an unhinged black guy saying that a white guy didn't buy him a beer and his career is destroyed." Matt Walsh, *#MeToo and Race Hoaxes*

---

[4] *See* AMERICA FIRST LEGAL, *Facing a New Threat*, https://aflegal.org/center-for-legal-equality/ ("[A] pernicious new ideology has taken hold in the elite power centers of our country, which decrees that people must be judged expressly based on their race, their gender, sexual preference, and their overall world view – and either be rewarded or punished accordingly. This fundamentally anti-American ideology must be defeated.").

*DESTROYED Their Lives*, FACEBOOK (Oct. 5, 2023),

https://www.facebook.com/MattWalshBlog/videos/metoo-and-race-hoaxes-destroyed-their-lives/268392806182645/ (7:57–8:06);

- Talbot publicly stated he was a "victim of cancel culture" and insisting that this "type of canceling and ruining people's lives . . . must stop." GOFUNDME, *Help John Talbot* (Aug. 25, 2023, archived Oct. 4, 2023), https://archive.ph/xti5N;

- "Until that fateful day in Bozeman, Montana, when Johnathan Talbot politely introduced himself to North Face-sponsored athlete Manoah Ainuu, he had a career, a reputation, and the belief that he would keep both. Unfortunately, that single encounter led to the destruction of Talbot's career and reputation, all due to a social media smear campaign launched by Ainuu based on a false and defamatory claim that Talbot had made a racist comment. To make matters worse, this action is in line and was endorsed by The North Face, whose commitment to 'social justice' seems to lack an appreciation for either what is appropriate social behavior and what is justice." AMERICA FIRST LEGAL, *America First Legal Sues The North Face Apparel Corporation and Sponsored Athlete for Defamation* (Oct. 3, 2023), Statement from Ian Prior, America First Legal Senior Advisor and counsel

14

for Talbot in this matter, https://aflegal.org/america-first-legal-sues-the-north-face-apparel-corporation-and-sponsored-athlete-for-defamation/.

Talbot disagreed with Ainuu's publicly stated opinions and countered them with his own public speech, offering similarly hostile but nonetheless protected opinions about Ainuu and about Talbot's own perception of their conflict, as the First Amendment contemplates. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339 (1974) ("however pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of ideas"); *accord Dunlap v. Wayne*, 716 P.2d 842, 847 (Wash. 1986); *Hale v. City of Billings*, 1999 MT 213, ¶ 24, 295 Mont. 495, 986 P.2d 413 (Mont. 1999).

Talbot's claims that Ainuu's speech related solely to their private interaction and, therefore, did not relate to matters of public concern are belied by the reality of his own Complaint and his own engagement with the public discourse about race and diversity.[5] His arguments to the contrary rely on inapplicable examples of purely private disputes and ignore well settled law. *See* TNF Reply Br., pp. 6–15.

---

[5] Instagram stories are, by their nature, ephemeral and Ainuu's posts disappeared within a day of their posting. Talbot's choice to publicize his encounter with Ainuu and to participate in and escalate the debate is, ironically, the only reason this dispute continues to publicly haunt both of them.

## CONCLUSION

Manoah Ainuu exercised his constitutional right to share his opinions about his interaction with Johnathan Talbot. Ainuu was met with a politically-charged lawsuit which effectively silenced and vilified him, halting his advocacy work and chilling his speech. This is exactly what Anti-SLAPP laws, like Washington's, are supposed to guard against. The district court correctly concluded that Ainuu's speech was inactionable opinion, but erred in finding that it was purely private speech. Ainuu's publicly shared opinions about his lived experience as a Black athlete related to matters of political and social concern and fall under the protection of the Washington Anti-SLAPP Act. An award of fees in favor of Ainuu and TNF was therefore mandatory.

DATED this 18th day of February 2025.

**GOETZ, GEDDES & GARDNER, P.C.**

/s/ Jeffrey J. Tierney
James H. Goetz
Jeffrey J. Tierney
Henry J.K. Tesar

Attorneys for Manoah Ainuu

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 24-2038; 24-2144; 24-2135

I am the attorney or self-represented party.

**This brief contains** | 2,866 | **words,** including | 2,866 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◯ complies with the word limit of Cir. R. 32-1.

🔘 is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [          ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/Jeffrey J. Tierney | **Date** | 02/18/2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**                                                                                   *Rev. 12/01/22*